# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| SUE ELLEN BROWN, | CASE NO. 3:14-CV-01462 |
| Plaintiff, | JUDGE HELMICK |
| v. | MAGISTRATE JUDGE VECCHIARELLI |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | **REPORT AND RECOMMENDATION** |

Plaintiff, Sue Ellen Brown ("Plaintiff"), challenges the final decision of Defendant, Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"), denying her applications for Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq.* ("Act"). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation.  For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

## I.   PROCEDURAL HISTORY

On June 16, 2010, Plaintiff filed her applications for POD, DIB, and SSI, alleging a disability onset date of June 15, 2010.  (Transcript ("Tr.") 81.)  Plaintiff's claims were denied initially and upon reconsideration, and Plaintiff requested a hearing before an administrative law judge ("ALJ").  (*Id.*)  On July 23, 2012, an ALJ held Plaintiff's hearing. (*Id.*)  Plaintiff participated in the hearing, was represented by counsel, and testified.  (*Id.*)  A vocational expert ("VE") also participated and testified.  (*Id.*)  On December 27, 2012, the

ALJ found that Plaintiff was "disabled" within the meaning of the Social Security Act from June 15, 2010, through September 18, 2012. (*Id.*) The ALJ concluded that on September 19, 2012, medical improvement occurred that was related to the ability to work, and that Plaintiff had been able to perform substantial gainful activity from that date through the date of the ALJ's hearing decision. (*Id.*) On June 3, 2014, the Appeals Council declined to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1.)

On July 2, 2014, Plaintiff filed her complaint to challenge the Commissioner's final decision. (Doc. No. 1.) The parties have completed briefing in this matter. (Doc. Nos. 13, 14.)

Plaintiff asserts the following assignments of error: (1) The ALJ erred in finding a medical improvement in Plaintiff's condition; (2) the ALJ breached his duty to develop the record; and (3) the ALJ erred in finding that Plaintiff could perform a significant number of jobs that exist in the national economy.

## II. EVIDENCE

**A.  Personal and Vocational Evidence**

Plaintiff was born in April 1960. (Tr. 638.) She had at least a high school education and was able to communicate in English. (Tr. 89.) She had past relevant work as a spark plug assembler, waitress, and general laborer. (*Id.*)

**B.  Medical Evidence**

    **1.  Medical Reports**

Plaintiff was admitted to the hospital in July 2010 due to concerns regarding mood instability and thoughts of self-harm. (Tr. 491.) Upon discharge, she began regular

treatment with Angela Best, M.D., a psychiatrist. (Tr. 560-563, 581-590.) During these appointments, Plaintiff complained of panic attacks, and mental status examinations revealed depressed mood, tearful affect, and poor memory and concentration. (*Id.*) Dr. Best also reported that Plaintiff displayed anhedonia, thoughts of suicide, generalized persistent anxiety, mood disturbance, difficulty thinking and concentrating, emotional lability, intense and unstable interpersonal relationships, sleep disturbance, and emotional withdrawal and isolation. (*Id.*)

On August 24, 2011, Dr. Best submitted a form entitled "Mental Impairment Questionnaire (Listings)." (Tr. 553-556.) Dr. Best reported clinical findings of post traumatic stress disorder (PTSD), panic attacks (severe), and mood instability. (Tr. 553.) She opined that Plaintiff had marked[1] limitations in the areas of activities of daily living; maintaining social functioning; and maintaining concentration, persistence, and pace. (Tr. 555.) Dr. Best concluded that Plaintiff would miss more than four days of work per month. (Tr. 556.)

### 2. Agency Reports

On August 23, 2012, Plaintiff was referred by the Ohio Division of Disability Determination (DDD) to psychologist J. Bruce Kelly, M.Ed., for a psychological evaluation. (Tr. 638-646.) Dr. Kelly noted that the sources for his evaluation included Plaintiff's "self-report, a pre-assessment questionnaire completed by [Plaintiff], and records provided by the Division of Disability Determination consisting of a Mental Assessment Questionnaire completed 8-29-11 by Angela Best M.D. who has been [Plaintiff's] psychiatrist for the past

---

[1] "Marked" was defined as meaning more than moderate but less than extreme. (Tr. 555.)

3

several years and 2011 Progress Notes also from Dr. Best." (Tr. 638.) Dr. Kelly noted that Plaintiff lived by herself in an apartment for five months. (Tr. 641.) She was responsible for cleaning, laundry, cooking, grocery shopping, and errands. (*Id.*) Plaintiff reported that on a typical day, she tried to keep busy. (*Id.*) She visited her mom or her friends, watched TV, and read. (*Id.*)

According to Dr. Kelly, Plaintiff's performance on the mental status exam suggested an average ability to maintain concentration. (Tr. 645.) He concluded that Plaintiff was expected to be able to understand and apply instructions in the work setting consistent with average intellectual functioning. (*Id.*) Dr. Kelly further noted that Plaintiff would be expected to respond appropriately to supervision and co-workers in a work setting. (Tr. 646.) He cautioned, however, that Plaintiff's anxiety and unstable mood, when present, might reduce her ability to respond to supervisors and co-workers. (*Id.*) When asked about Plaintiff's ability to respond appropriately to work pressures in a work setting, Dr. Kelly responded that Plaintiff reported a history of significant psychological inability to adjust to workplace demands. (*Id.*) He opined that Plaintiff was not expected to respond appropriately to workplace pressures. (*Id.*) Dr. Kelly added that Plaintiff's mood was more stable with her current medication and therapy. (*Id.*)

**C.     Hearing Testimony**

   **1.     Plaintiff's Hearing Testimony**

Plaintiff testified that she left her last job because she had a mental breakdown. (Tr. 102.) She stated that at that time, she was dealing with mental illness and had missed a lot of work. (*Id.*) She said that she had experienced panic attacks due to the pressures of finances and her job. (Tr. 104.) Plaintiff testified that she did not get along

4

with her coworkers and that she would sometimes have angry outbursts. (Tr. 105.)

Plaintiff stated that she took medications for her mental condition and that she saw her psychologist, Dr. Best, every three months. (Tr. 106.) She stated that she sometimes experienced side effects from her medications, including migraines, lethargy, and the shakes. (Tr. 108-109.)

### 2. Vocational Expert's Hearing Testimony

Erin O'Callahan, a vocational expert, testified at Plaintiff's hearing. The ALJ asked the VE to assume a hypothetical individual of Plaintiff's age, education, and work experience who could perform light work and would be limited to the performance of unskilled work that involved simple, routine, and repetitive tasks. (Tr. 117-118.) The individual would be off-task 15% of the time. (Tr. 119.) The VE testified that the hypothetical individual would be capable of performing such jobs as an inspector (Dictionary of Occupational Titles ("DOT") #733.687-062; 4,000 jobs in Ohio); and a lobby attendant (DOT #762.687-014; 2,000 jobs in Ohio). (Tr. 119.)

### III. STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). To receive SSI benefits, a recipient must also meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), and 416.920(g).

### IV. SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2015.

2. The claimant has not engaged in substantial gainful activity since June 15, 2010, the date the claimant became disabled.

3. From June 15, 2010, through September 18, 2012, the period during

       which the claimant was under a disability, the claimant had the following severe impairments: bipolar disorder, post-traumatic stress disorder, and panic disorder.

4. From June 15, 2010, through September 18, 2012, the period during which the claimant was disabled, the severity of the claimant's impairments met the criteria of section 12.04 of 20 CFR Part 404, Subpart P, Appendix 1.

5. The claimant was under a disability, as defined by the Social Security Act, from June 15, 2010, through September 18, 2012.

6. The claimant has not developed any new impairment or impairments since September 19, 2012, the date the claimant's disability ended. Thus, the claimant's current severe impairments are the same as that present from June 15, 2010, through September 18, 2012.

7. Beginning September 19, 2012, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1.

8. Medical improvement occurred as of September 19, 2012, the date the claimant's disability ended. Furthermore, the medical improvement that has occurred is related to the ability to work because the claimant no longer has an impairment or combination of impairments that meets or medically equals the severity of a listing.

9. After careful consideration of the entire record, the undersigned finds that, beginning September 19, 2012, the claimant has had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). Mentally, the claimant is limited to the performance of unskilled work as defined in 20 CFR 404.1568 and 416.968 that involves simple, routine, and repetitive tasks. Any job must also allow the claimant to be off-task 15% of the time.

10. The claimant is unable to perform past relevant work.

11. Since September 19, 2012, the claimant has been an individual closely approaching advanced age.

12. The claimant has at least a high school education and is able to communicate in English.

13. Beginning September 19, 2012, transferability of job skills is not material

     to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

14. Beginning September 19, 2012, considering the claimant's age, education, work experience, and residual functional capacity, there have been jobs that exist in significant numbers in the national economy that the claimant can perform.

15. The claimant's disability ended September 19, 2012.

(Tr. 85-90.)

## LAW & ANALYSIS

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

### B. Plaintiff's Assignments of Error

#### 1. The ALJ Erred in Finding a Medical Improvement in Plaintiff's Condition.

The ALJ found that Plaintiff was "disabled" within the meaning of the Social Security Act beginning June 15, 2010, but that her disability ended on September 19, 2012. (Tr. 82.) The ALJ therefore engaged in the eight-step analysis[2] relevant to determining whether there was a medical improvement in Plaintiff's condition that was related to her ability to work. (Tr. 83-85.) Under the regulations, Plaintiff's disability benefits could be

---

[2] If a claimant is found disabled at any point of the sequential evaluation process, the Commissioner must also determine if her disability continues through the date of the decision. There is an eight-step process for evaluating whether a claimant has a continuing disability. The process, generally, is as follows. (1) If the claimant is working, she is no longer disabled. (2) If the claimant is not working and her impairments meet or equal the Listings, disability is continued. (3) If the claimant's impairments do not meet or equal the Listings, and there has been medical improvement, the sequential analysis proceeds to step four; and if there has not been medical improvement, the analysis proceeds to step five. (4) If the medical improvement is related to the claimant's ability to work, the sequential analysis proceeds to step six; if not, it proceeds to step five. (5) If there is no medical improvement, or if the medical improvement is not related to the claimant's ability to work, and one of the exceptions to medical improvement apply, the claimant is no longer disabled. If none of the exceptions apply, the sequential analysis continues. (6) If medical improvement is related to the ability to work, and all current impairments are not severe, the claimant is no longer disabled. (7) If the impairments are severe, the Commissioner determines the claimant's residual functional capacity (RFC) and considers whether she can perform her past work. If she can, she is no longer disabled. (8) If the claimant cannot perform her past work, the Commissioner decides whether she can perform other work given her RFC, age, education, and work experience. If the claimant can, she is no longer disabled; if not, disability is continued. *See* 20 C.F.R. §§ 404.1594(f) and 416.994(b)(5); *Johnson v. Sec'y of Health & Human Servs.*, 948 F.2d 989, 991 (6th Cir. 1991).

terminated if there had been any medical improvement in her condition, if the improvement was related to the ability to work, and if she was currently able to engage in substantial gainful activity. 20 C.F.R. § 404.1594(a). "Medical improvement" is "any decrease in the medical severity of [a claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant was] disabled or continued to be disabled." 20 C.F.R. § 404.1594(b)(1). A determination of medical improvement "must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with [the claimant's] impairment(s)." *Id*. The burden of proof in establishing a medical improvement lies with the Commissioner. *Nierzwick v. Comm'r of Soc. Sec.*, 7 F. App'x 358, 361 (6th Cir. 2001).

The ALJ found that from June 15, 2010, through September 18, 2012, the severity of Plaintiff's impairments met the criteria of Listing 12.04.[3] (Tr. 86.) The ALJ explained:

> The "paragraph A" criteria were satisfied because the claimant had anhedonia, feelings of guilt and worthlessness, difficulty thinking or concentrating, easy distractibility, and sleep disturbance (Exhibit 11F). The "paragraph B" criteria were satisfied because the claimant's impairments caused marked restriction in activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation of extended duration.

(Tr. 86.) The ALJ based his conclusion that Plaintiff met Listing 12.04 on the findings of Dr. Best's August 2011 mental impairment questionnaire. (Tr. 86, 553-556.) The ALJ acknowledged that in August 2011, Dr. Best opined that Plaintiff had marked limitations in the areas of activities of daily living; maintaining social functioning; and maintaining

---

[3] Listing 12.04 is the listing for affective disorders. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.04.

10

concentration, persistence, or pace. (Tr. 86, 555.)

The ALJ further noted that the record did not show that Plaintiff received any treatment from Dr. Best or a therapist since November 2011. (Tr. 87.) As a result, before deciding Plaintiff's disability claims, Plaintiff was referred for a psychological evaluation. (Tr. 87, 638.) On August 23, 2012–one year since Dr. Best last offered an opinion regarding Plaintiff's RFC–Dr. Kelly assessed Plaintiff's capacity for understanding and memory, sustained concentration and persistence, and social interaction. (Tr. 638-646.) In doing so, he considered Plaintiff's self-reports, her treatment records, and Dr. Best's August 2011 RFC opinion, and he conducted a clinical interview with Plaintiff. (Tr. 638.) Based on Dr. Kelly's findings, the ALJ concluded that Plaintiff had mild restriction in activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation. (Tr. 87.) Accordingly, the ALJ found that as of September 19, 2012, Plaintiff no longer had an impairment or combination of impairments that satisfied a listing, and therefore medical improvement had occurred. (Tr. 88.) Plaintiff has not challenged Dr. Kelly's findings. Therefore, Plaintiff has failed to show that the ALJ erred in finding a medical improvement in Plaintiff's condition.

Plaintiff maintains that Dr. Kelly's August 2012 RFC opinion cannot suffice as substantial evidence in support of the ALJ's opinion, because Dr. Kelly found that Plaintiff "is not expected to respond appropriately to workplace pressures." (Tr. 646.) Plaintiff maintains that an inability to respond appropriately to workplace pressures would preclude her from engaging in substantial gainful activity, and thus would render her disabled. As the Commissioner notes, however, the ALJ specifically addressed the concern that Dr.

11

Kelly raised about Plaintiff's ability to tolerate workplace pressures and explained that he rejected that aspect of Dr. Kelly's opinion. After summarizing Plaintiff's self reports, the results of the mental status examination, and Dr. Kelly's conclusions, the ALJ wrote:

> [Dr. Kelly] also noted that the claimant's anxiety and unstable mood may reduce her ability to respond to supervisors and co-workers but that she should generally be able to respond appropriately to supervision and co-workers in a work setting. [He] also noted that the claimant would be unable to respond appropriately to workplace pressures; however, this portion of the opinion appears to have been based upon the claimant's own reports of previous difficulties in the workplace. Therefore, this portion of the opinion is given no weight, and the remainder of the opinion is given significant weight because it is consistent with the CE's examination of the claimant.

(Tr. 87.) Thus, the ALJ considered Dr. Kelly's finding regarding Plaintiff's potential difficulties tolerating workplace pressures and explained why he could not accept that finding. (*Id.*) A review of Dr. Kelly's report supports the ALJ's conclusion. Dr. Kelly stated that Plaintiff reported a history of significant psychological inability to adjust to workplace demands. (Tr. 646.) He also noted a reported history of mental or emotional deterioration in response to work exposure. (*Id.*) Thus, the ALJ reasonably concluded from the language of Dr. Kelly's assessment that he based his concern regarding Plaintiff's ability to cope with workplace pressures on Plaintiff's reports of previous difficulties in the workplace. (Tr. 87.)

Moreover, even if the ALJ had accepted Dr. Kelly's opinion that Plaintiff may be unable to respond appropriately to workplace pressures, Plaintiff has not shown how this single finding would support her claim Plaintiff would have been found disabled after September 19, 2012. As the ALJ explained in detail, Dr. Kelly's August 2012 assessment supports a finding that Plaintiff no longer met the criteria of Listing 12.04 as of September

12

19, 2012.[4] (Tr. 87.) Based on his analysis of Dr. Kelly's opinion, the ALJ concluded that Plaintiff no longer met the criteria of Listing 12.04, because she had only mild restriction in activities of daily living and in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. (*Id.*) Plaintiff does not specifically dispute this finding at step three of the sequential evaluation process. Accordingly, substantial evidence supports the ALJ's finding of medical improvement, and Plaintiff's first assignment of error is without merit.

## 2. The ALJ Breached His Duty to Develop the Record.

Plaintiff argues that the ALJ breached his duty to develop the record by failing to: (1) resolve the ambiguity and/or insufficiency in the record between Plaintiff's treatment testimony and the medical records; and (2) obtain material facts regarding Plaintiff's unsuccessful work attempts. Although Plaintiff's second assignment of error is not entirely clear or well-developed, it appears that she challenges two specific statements in

---

[4] The ALJ noted that Plaintiff reported to Dr. Kelly that she got along with her siblings, adult children, and mother; her mood was more stable with her current medication and therapy; she had some anxiety in social situations but reported having no significant problems in relating to neighbors or clerks in stores or public agencies; and she presented as cooperative during her interview. (Tr. 87.) Plaintiff also reported that she visited her mother and friends, watched television, and read, and mental status examination revealed her to be oriented and alert and to have intact fund of information, short and long-term memory, insight, and judgment. (*Id.*) Based on his examination of Plaintiff, Dr. Kelly concluded that Plaintiff would be able to understand and apply instructions in a work-setting consistent with average intellectual functioning and would have no difficulties maintaining attention, concentration, persistence, or pace. (Tr. 87, 645-646.) He further indicated that Plaintiff appeared to generally appropriately comprehend and use judgment in her life, noting that Plaintiff's judgment seemed reasonably sufficient to make important life decisions affecting her future, conduct her living arrangements, and independently manage her own funds. (Tr. 643.) Dr. Kelly also noted that Plaintiff related in a friendly manner and was expected to generally respond appropriately to supervision and to coworkers in a work setting. (Tr. 645.)

the ALJ's decision. The first is the ALJ's comment that while Plaintiff testified that she continued to see Dr. Best on a regular basis, the record contained no evidence that Plaintiff had seen Dr. Best or a therapist since November 2011. (Tr. 87.) The second statement Plaintiff challenges is the ALJ's observation that because the record reflects work activity through the third quarter of 2011, Plaintiff's daily activities, and therefore her abilities, may have been somewhat greater than what she reported. (Tr. 88.)

Plaintiff argues that the ALJ made a negative inference based on Plaintiff's alleged lack of treatment, and that the ALJ should have contacted Dr. Best or Dr. Kelly to determine whether Plaintiff had in fact not received any treatment for her mental condition since November 2011. The Court disagrees. Although the ALJ has a duty to ensure that a reasonable record has been developed, *see Johnson v. Sec'y of Health & Human Servs.*, 794 F.2d 1106, 1111 (6th Cir. 1986), it is incumbent upon the claimant to provide an adequate record upon which the ALJ can make an informed decision regarding the claimant's disability status, *see Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986). Here, Plaintiff has offered no evidence other than her hearing testimony that, contrary to the ALJ's assertion, she received treatment after November 2011. The ALJ specifically asked Plaintiff's counsel at the hearing whether the record was complete and if he was aware of any reports that were not included in the record. (Tr. 98.) Plaintiff's attorney responded that he was unaware of any missing reports and stated that he believed the record was up to date. (*Id.*) Additionally, Plaintiff admits in her Brief that the last, most recent, treatment note in the record is dated November 15, 2011. (Plaintiff's Brief ("Pl.'s Br.") 4.) Thus, Plaintiff has not demonstrated that the ALJ's failure to contact Dr. Best or Dr. Kelly to confirm the extent of Plaintiff's mental health treatment history

14

would have any effect on the outcome of her case.

Moreover, while Plaintiff accuses the ALJ of drawing an impermissible negative inference from her lack of treatment history, she offers no reasonable basis for this conclusion. With regard to Plaintiff's lack of treatment, the ALJ stated: "While the claimant testified that she continues to treat with Dr. Angela Best, her psychiatrist, and a therapist, there is no evidence that she has received any treatment since November 2011. Therefore, the claimant was sent for a psychiatric consultative examination in August 2012." (Tr. 87.) This language suggests that the ALJ addressed Plaintiff's lack of treatment since November 2011 to explain why Plaintiff was referred for a consultative evaluation in August 2012.[5] Plaintiff has failed to demonstrate that the ALJ drew an impermissible negative inference from Plaintiff's lack of treatment in determining that medical improvement had occurred.

Plaintiff also claims that "the ALJ should have asked the Plaintiff (who was found by Mr. Kelly to be a reliable historian) the nature and extent of the unsuccessful work attempts, and why she left each employer in her work history." (Pl.'s Br. 14.) According to Plaintiff, the ALJ erred in drawing a negative inference from Plaintiff's work activity in 2011, because he did not question Plaintiff about why her work attempt in the third quarter

---

[5] Plaintiff argues that "it was incumbent upon the ALJ not to issue an immediate decision, but to develop the record to resolve the direct conflict between the records and Plaintiff's testimony prior to making a negative inference of medical improvement." (Pl.'s Br. 11.) The ALJ did just that. Following the administrative hearing, the ALJ referred Plaintiff for a consultative examination. Plaintiff was referred to Dr. Kelly so that he could assess Plaintiff's capacity for understanding and memory, sustained concentration and persistence, and social interaction. (Tr. 87, 638.) This evaluation took place on August 12, 2012–one month after the ALJ held Plaintiff's hearing. The ALJ did not issue his decision until December 2012, four months after Plaintiff saw Dr. Kelly.

15

of 2011 was ultimately unsuccessful. This argument has no merit.

In his decision, the ALJ noted that the record showed work activity for Plaintiff through the third quarter of 2011. (Tr. 88.) The ALJ determined that this work did not constitute disqualifying substantial gainful activity, but observed that it showed that Plaintiff's daily activities, at times, may have been somewhat greater than what Plaintiff has generally reported. (*Id.*) Plaintiff argues that the ALJ should have inquired about the nature and extent of Plaintiff's unsuccessful work attempts, because "a reasonable mind" would have done so. (Pl.'s Br. 11.) Plaintiff offers no legal support for this argument, providing only a bare assertion that the ALJ should have asked about Plaintiff's past work attempts. The ALJ did, however, ask Plaintiff about her past work, and Plaintiff responded that she left her last job in June 2010 due to issues with her mental state. (Tr. 102.) Plaintiff did not testify about her work activity through the third quarter of 2011, and her attorney failed to question her about it. As the Commissioner observes, "if there is any error here, it is on the part of [Plaintiff] who could have testified about her unsuccessful work attempts, but instead testified that she had not worked since June 2010, or her representative who also did not question her about work after that date." (Defendant's Brief ("Def.'s Br.") 11.)

Furthermore, Plaintiff maintains that the "negative inference" the ALJ drew from Plaintiff's ability to perform some work in 2011 was that Plaintiff could respond appropriately to workplace pressures given her ability to work in the past. (Pl.'s Br. 14.) A review of the ALJ's opinion, however, indicates that the ALJ did not infer from Plaintiff's past work an ability to cope with workplace pressures. Rather, the inference the ALJ drew from Plaintiff's ability to work in 2011 and her failure to acknowledge that work when

16

questioned about it at her hearing, was that Plaintiff's self-reports regarding her condition were less than fully credible. (Tr. 88.) In discussing Plaintiff's past work activity, the ALJ explicitly stated that the work "indicate[s] that [Plaintiff's] daily activities have, at least at times, been somewhat greater than the claimant has generally reported." (Tr. 88.) The ALJ immediately followed that sentence with this statement: "***Also reducing the claimant's credibility*** is the fact that while she testified that she experiences side-effects from her medications including 'shakiness' and migraines, there is no evidence that she ever reported such side effects to a treatment provider. While this inconsistent information may not be the result of a conscious intention to mislead, it nevertheless suggests that the information provided by the claimant generally regarding the current severity of her symptoms may not be entirely credible." (Tr. 88-89) (emphasis added). Thus, it is clear from the language of the ALJ's decision that he discussed Plaintiff's work activity through the third quarter of 2011 not to show that Plaintiff could now cope with workplace pressures, but to show that her self-reports regarding her condition were less than fully credible. Accordingly and for the foregoing reasons, Plaintiff has failed to show that the ALJ breached his duty to develop the record.

### 3. The ALJ Erred in Finding That Plaintiff Could Perform a Significant Number of Jobs that Exist in the National Economy.

At Plaintiff's hearing, the VE testified that an individual with Plaintiff's RFC could perform 4,000 jobs in Ohio as an inspector, and 2,000 jobs in Ohio as a lobby attendant. (Tr. 119.) Plaintiff contends that the VE's testimony does not constitute substantial evidence to support the Commissioner's step five burden, because the VE did not identify the number of jobs available in the United States, nor did the VE identify the regions in

17

Ohio where the 6,000 inspector and lobby attendant jobs exist. Plaintiff's argument lacks merit.

Work exists in the national economy when it exists in significant numbers either in the region where the claimant lives "or in several other regions of the country." 20 C.F.R §§ 404.1566(a), 416.966(a). "It does not matter whether work exists in the immediate area in which you live." 20 C.F.R. §§ 404.1566(a)(1), 416.966(a)(1). If the claimant's RFC and vocational abilities make it possible for her to do work which exists in the national economy, but she remains unemployed because of "lack of work in [her] local area," the ALJ will determine that she is not disabled. 20 C.F.R. §§ 404.1566(c)(2), 416.966(c)(2). Thus, the regulations plainly state that as long as work exists in significant numbers in the region where the claimant lives *or several other regions*, the claimant will not be found disabled, even if there is a lack of work in the claimant's "immediate area." As a result, Plaintiff's argument that the ALJ erred in relying on the testimony of a VE who did not specifically testify to the number of jobs available in the national economy or the region in Ohio where Plaintiff lives is without legal support.

Furthermore, Plaintiff has not shown that the number of inspector and lobby attendant jobs available in Ohio is not significant. There is no "special number" which is to be the boundary between a "significant number" and an insignificant number of jobs. *Hall v. Bowen,* 837 F.2d 272, 275 (6th Cir. 1988). This Court has no doubt, however, that a total of 6,000 jobs in Ohio meets the Commissioner's step five burden of proving that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. See *Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 375 (6th Cir. 2006) (finding that 870 jobs can constitute a significant number in a geographic region); *Bishop*

18

*v. Shalala*, 64 F.3d 662 (Table), No. 94-5375, 1995 WL 490126, at *2-3 (6th Cir. Aug. 15, 1995) (finding that 6,100 jobs nationally constituted a significant number of jobs); *Lewis v. Sec'y of Health & Human Servs.*, No. 94-1807, 1995 WL 124320, at *1 (6th Cir. Mar. 22, 1995) (finding that 14,000 jobs nationally constituted a significant number of jobs); *Girt v. Astrue*, No. 5:09-cv-1218, 2010 WL 908663, at *4 (N.D. Ohio Mar. 12, 2010) (finding that 600 jobs state-wide and 35,000 jobs nationally constituted a significant number of jobs). Accordingly, Plaintiff's third assignment of error does not present a basis for remand of her case.

## VI. CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

                          s/ *Nancy A. Vecchiarelli*
                          U.S. Magistrate Judge

Date: February 24, 2015

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order. See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**